# UNITED STATES BANKRUPTCY COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| In re:<br><br>LAURA JANELLE STEWART,<br><br>　　　Debtor. | Case No.   07-10860-RGM<br>(Chapter 7) |
| METALMARK NORTHWEST, L.L.C.,<br><br>　　　Plaintiff,<br><br>vs.<br><br>LAURA JANELLE STEWART,<br><br>　　　Defendant. | Adv. Proc. No. 07-1091 |

## MEMORANDUM OPINION

This case is before the court on Laura J. Stewart's motion for summary judgment. Metalmark Northwest, L.L.C. filed a complaint against Ms. Stewart, the debtor in this bankruptcy case, asserting that a judgment it obtained in the United States District Court for the District of Oregon is nondischargeable under §§523(a)(4) and (a)(6) of the Bankruptcy Code. The debtor argues that the arbitration award which the District Court confirmed and which is the basis for the judgment itself precludes findings of nondischargeability.

Metalmark is a limited liability company composed of two members, Valley Bronze of Oregon, Inc. and Stewart Springs, Ltd. The debtor was the president and principal of Stewart Springs. Metalmark was organized so that the two members could bid on a government contract. After being advised that Metalmark's bid was the lowest bid, the debtor withdrew the bid and submitted an identical bid on behalf of a new company that did not include Valley Bronze.

Metalmark sued the debtor and others on various theories. The case was referred to arbitration. The arbitrator found against the debtor on two grounds, both breach of contract and breach of fiduciary duties. The arbitrator denied Metalmark's claim for punitive damages on the breach of fiduciary duty count, stating:

> I find that Metalmark was damaged by the actions described. Although the question of punitive damages is a close one, particularly in light of Janelle Stewart's efforts to hide her involvement in the new venture, I find that she relied on the advice of her father in the belief that she had the right and authority to carry out these actions and plans and lacked the necessary willfulness or reckless disregard necessary to impose punitive damages.

Interim Arbitration Award, at 3.

The debtor asserts that she was not a fiduciary within the meaning of that term in §523(a)(4) of the Bankruptcy Code and that the arbitrator's finding with respect to her state of mind precludes this court finding that the injury was willful and malicious as used in §523(a)(6) of the Bankruptcy Code.

The debtor is correct that the fiduciary relationship that she had is not the kind of fiduciary relationship contemplated by §523(a)(4) of the Bankruptcy Code. Section 523(a)(4) and its predecessors have long narrowly construed scope of fiduciary relationships encompassed by them. There must be a technical or express trust which predates and exists apart from the act creating the liability. Agents, bailees, brokers, factors, partners and similarly situated persons are generally excluded. 4 *Collier on Bankruptcy* ¶523.10[1][d] (15th ed., 2008). *See KMK Factoring, LLC v. McKnew (In re McKnew),* 270 B.R. 593, 624 (Bankr.E.D.Va. 2001); *Global Express Money Orders,*

*Inc. v. Davis (In re Davis),* 262 B.R. 673, 682 (Bankr.E.D.Va.2001).[1] The debtor's fiduciary duty does not fall within the parameters of §523(a)(4). It is much more akin to the duties partners owe to each other. To hold otherwise would make every breach of every fiduciary duty by every officer, director, manager or partner a nondischargeable debt, a result not anticipated by the Bankruptcy Code. While there is a fiduciary duty, it is not a pre-existing trust relationship. *Davis v. Aetna Acceptance Co.,* 293 U.S. 328, 333, 55 S.Ct. 151, 153 (1934).

The debtor's argument with respect to the denial of punitive damages is facially attractive. In *Davis*, the Supreme Court stated that every conversion is not a willful and malicious injury to property. It stated:

> The respondent contends that the petitioner was liable for a willful and malicious injury to the property of another as the result of the sale and conversion of the car in his possession. There is no doubt that an act of conversion, if willful and malicious, is an injury to property within the scope of this exception. Such a case was *McIntyre v. Kavanaugh,* 242 U.S. 138, 37 S.Ct. 38, 61 L.Ed. 205, where the wrong was unexcused and wanton. But a willful and malicious injury does not follow as of course from every act of conversion, without reference to the circumstances. There may be a conversion which is innocent or technical, an unauthorized assumption of dominion without willfulness or malice. [citations omitted]. There may be an honest but mistaken belief, engendered by a course of dealing, that powers have been enlarged or incapacities removed. In these and like cases, what is done is a tort, but not a willful and malicious one. Turning to the findings here, we see that willfulness and malice have been unmistakably excluded.

---

[1] *Republic of Rwanda v. Uwimana (In re Uwimana),* 274 F.3d 806 (4th Cir.2001) does not assist MetalMark. In that case, the Court of Appeals states that "Although apparently no case so holds, we agree with the district court that ambassadors are, by definition, fiduciaries for the country they represent." *Id.* at 811. Both the court and the parties assumed that such a fiduciary relationship was within the scope of §523(a)(4). Notwithstanding the absence of such a discussion, it is apparent from the opinion that the fiduciary relationship is within the scope of §523(a)(4). It was a pre-existing, express trust relationship not arising on or from the default of the ambassador. The matter concerned money entrusted to the ambassador by Rwanda that the ambassador did not turn-over when requested. The question litigated was whether there was a defalcation.

*Davis* 293 U.S. at 331-332; 55 S.Ct. at 153. This precept was reaffirmed in *Kawaauhau v. Geiger,* 523 U.S. 57, 118 S.Ct. 974 (1998).

The difficulty with using the arbitrator's finding is that Oregon law requires clear and convincing evidence before punitive damages may be awarded. O.R.S. §31.730(1). Section 523(a)(6) only requires a preponderance of the evidence. *Grogan v. Garner,* 498 U.S. 279, 111 S.Ct. 654 (1991).[2] Although the evidence of lack of the requisite intent did not reach the clear and convincing standard, it may have reached the preponderance standard. Proof of the absence of the requisite intent by the preponderance of the evidence has not been established.

The debtor's motion will be granted as the fiduciary defalcation claim and denied as to the willful and malicious injury claim.

Alexandria, Virginia
March 7, 2008

/s/ Robert G. Mayer
Robert G. Mayer
United States Bankruptcy Judge

copies to:

William Daniel Sullivan
Stephen Nichols

14074

---

[2]The Supreme Court stated:

At the outset, we distinguish between the standard of proof that a creditor must satisfy in order to establish a valid claim against a bankrupt estate and the standard that a creditor who has established a valid claim must still satisfy in order to avoid dischargeability. The validity of a creditor's claim is determined by rules of state law. *See Vanston Bondholders Protective Comm. v. Green,* 329 U.S. 156, 161, 67 S.Ct. 237, 239, 91 L.Ed. 162 1946). Since 1970, however, the issue of nondischargeability has been a matter of federal law governed by the terms of the Bankruptcy Code. *See Brown v. Felsen,* 442 U.S. 127, 129-130, 136, 99 S.Ct. 2205, 2208-2209, 2211, 60 L.Ed.2d 767 (1979).

*Grogan v. Garner,* 498 U.S. at 283-284; 111 S.Ct. at 657-658 (footnote omitted). The debtor makes the mistake of conflating the two standards of proof.